Ira D. Kharasch (admitted *pro hac vice*)
Harry D. Hochman (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, California  90067
Telephone: (310) 277-6910
E-mail: ikharasch@pszjlaw.com
        hhochman@pszjlaw.com

Laurel E. Davis (NV Bar No. 3005)
Craig S. Dunlap (NV Bar No. 4974)
FENNEMORE CRAIG, P.C.
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-mail: ldavis@fclaw.com
        cdunlap@fclaw.com

Attorneys for Appellants Meritage Homes of Nevada, Inc.
and Meritage Homes Corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SOUTH EDGE, LLC,<br><br>                              Debtor.<br><br>───────────────────────<br><br>MERITAGE HOMES OF NEVADA, INC. and<br>MERITAGE HOMES CORPORATION,<br><br>                              Appellants,<br><br>     v.<br><br>JPMORGAN CHASE BANK, N.A., ET AL.,<br><br>                              Appellees. | Case No. 2: 11-CV-01963-PMP-PAL<br><br>(BK-S-10-32968-BAM)<br><br>(Appeal from the United States Bankruptcy Court, District of Nevada)<br><br>Chapter 11<br><br><br><br>**APPELLANTS' REPLY BRIEF** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ................................................................................................... 4

    A.    The Bankruptcy Court Erred in Approving a Release of Third Party Claims Against Non-Debtors ........................................................................................ 4

        1.    The Exculpation is an Impermissible Release ............................................. 4

        2.    Federal Preemption is Not a Basis for a Release ...................................... 10

        3.    There is No Basis in the Record for the Factual Findings Supporting the § 8.10 Release ......................................................................................... 13

    B.    The Court Erred in Ruling that the Plan Treatment Shall Not "Affect" or "Satisfy" Liability on the Guaranties ........................................................... 14

        1.    Meritage Does Not Seek a Release, But a Hearing on the Merits of its Defense ..... 14

        2.    The Merits of These Defenses Were Not Before the Court ....................................... 16

    C.    The Court Erred in Granting a Post-Confirmation Injunction and Discharge ................. 19

III. CONCLUSION ............................................................................................. 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re 944 Media, LLC,*
 2010 Bankr. LEXIS 3904 (Bankr. C.D. Cal., May 7, 2010) ...................... 9

*In re Airadigm Communications, Inc.,*
 519 F.3d 640 (7th Cir. 2008) ......................................................... 10

*In re Aloha Airlines, Inc.,*
 2008 Bankr. LEXIS 3971 *12-13 (Bankr. D. Haw. 2008) ...................... 9

*Astor Holdings, Inc. v. Roski,*
 325 F.Supp. 2d 251 ( S.D.N.Y. 2003) ............................................. 12

*In re Ball,*
 2008 WL 8444789 *1 (9th Cir. BAP 2008)....................................... 19

*In re Birting Fisheries, Inc.,*
 300 B.R. 489 (9th Cir. BAP 2003) .................................................. 5

*Blixseth v. Yellowstone Mountain Club, LLC (In re Yellowstone Mountain Club, LLC),*
 460 B.R. 254 (Bankr. D. Mont. 2011) ............................................. 5

*Blixseth v. Yellowstone Mountain Club, LLC,*
 2010 WL 4371368 *2 (D. Mont. 2010) ............................................ 5

*In re Congoleum Corp.,*
 362 B.R. 167 (Bankr. D. N.J. 2007) ................................................ 4

*In re Delta Airlines, Inc.,*
 374 B.R. 516 (Bankr. S.D.N.Y. 2007) ............................................. 10

*In re Extended Stay Inc.,*
 435 B.R. 139 (S.D.N.Y. 2010) ....................................................... 11

*In re Firstline Corp.,*
 2007 WL 269086 (Bankr.M.D.Ga.2007) .......................................... 6

*Gonzales v. Parks,*
 830 F.2d 1033 (9th Cir. 1987) ....................................................... 10

*In re Hayes,*
 2008 WL 8444812 *5 (9th Cir BAP March 31, 2008) .......................... 19

*In re Lighthouse Lodge, LLC,*
 2010 WL 4053984 (Bankr. N.D. Cal. 2010) ...................................... 6

*Miles v. Okun (In re Miles),*
 430 F.3d 1083 (9th Cir. 2005) ....................................................... 10

*MSR Exploration v. Meridian Oil,*
 74 F.3d 910 (9th Cir. 1995) .......................................................... 10

*In re Pacific Lumber Co.,*
 584 F.3d 229 (5th Cir. 2009) ........................................................ 7

*In re PTL Holdings LLC,*
 2011 WL 5509031 *12 (Bankr. D. Del. Nov. 10, 2011) ....................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*In re PWS Holding Company*,
    228 F.3d 224 (3d Cir. 2000) ............................................................................. 4

*In re Sanitec Industries, Inc.*,
    2009 WL 7809007 *13, 2009 Bankr. LEXIS 4532 (9th Cir. BAP 2009) .............. 5

*In re Station Casinos, Inc.*,
    2010 Bankr. LEXIS 5380 (Bankr. D. Nev.) ....................................................... 8

*In re Tribune Co.*
    --- B.R. ----, 2011 WL 5142420 *46 (Bankr. D. Del. Oct. 31, 2011) (same) ........... 5

*In re Washington Mutual, Inc.*,
    442 B.R. 314 ...................................................................................................... 5

*In re WCI Cable, Inc.*,
    282 B.R. 457 (Bankr.D.Or.2002) ..................................................................... 6

*In re Western Asbestos Co.*,
    313 B.R. 832 ...................................................................................................... 6

*Underhill v. Royal*,
    769 F.2d 1426 (9th Cir.1985) .......................................................................... 7

*Walton v. Houlihan, Lokey, Howard & Zukin (In re UA Theatre Co.)*,
    315 F.3d 217 (3d Cir. 2003) .............................................................................. 4

**Statutes**

11 U.S.C. § 303(i) ............................................................................................... 11

11 U.S.C. § 362 .................................................................................................. 19

11 U.S.C. § 362(a) .............................................................................................. 20

11 U.S.C. § 524(e) ........................................................................... 2, 5, 6, 7, 8, 16

11 U.S.C. § 1103 ................................................................................................. 4

11 U.S.C. § 1125(d)-(e).

11 U.S.C. § 1125(e) ........................................................................................ 8, 9

11 U.S.C. § 1141(d)(3) ....................................................................................... 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

ii

1    Appellants Meritage Homes of Nevada, Inc. and Meritage Homes Corporation (collectively,

2  "Meritage") hereby submit *Appellants' Reply Brief* in support of their appeal of the *Order*

3  *Confirming Joint Plan of Reorganization Proposed by JPMorgan Chase Bank, N.A., as*

4  *Administrative Agent under the Prepetition Credit Agreement, and the Settling Builders (Amended*

5  *as of October 21, 2011); and Findings of Fact and Conclusions of Law in Support Thereof*, entered

6  by the United States Bankruptcy Court for the District of Nevada (the "<u>Bankruptcy Court</u>") on

7  October 27, 2011 [DN 1335] (the "<u>Order</u>").

8  **I.**

9  <u>**INTRODUCTION**</u>

10    The Plan Proponents are suing Meritage on its Repayment Guaranty and threatening further

11  litigation to collect on claims that Meritage contends would not exist but for their own conduct.

12  Nonetheless, they portrayed Meritage as a litigious holdout – even though Meritage is in a defensive

13  posture and only commenced one of the pending actions – and they successfully utilized the Plan to

14  restrict Meritage's defenses and setoffs to such claims.  But Meritage has rights that it is entitled to

15  assert in its defense and to have decided on the merits.  <u>Those rights were not properly released or</u>

16  <u>circumscribed through the Plan</u>.  There is no "zone of protected conduct" that freezes the contractual

17  rights of non-debtors against each other on the date a third party files for bankruptcy relief.  There

18  are non-debtor releases that might work such magic based on the facts emphasized by Appellees,

19  *i.e.*, a substantial and necessary plan contribution, but <u>only</u> in certain jurisdictions other than the

20  Ninth Circuit.  That law cannot be circumvented by calling a release "exculpation."

21    There are only four discrete issues on appeal, two of which are purely questions of law: (1)

22  did the bankruptcy court have the power to "exculpate" non-debtor plan proponents by ordering that

23  the bankruptcy cannot affect their rights vis-à-vis Meritage; (2) if so, were its findings sufficient and

24  supported; (3) in ruling that the Plan would not have the effect of satisfying the Repayment

25  Guaranty, did the bankruptcy court decide an issue that was not before it; and (d) did the bankruptcy

26  court have the authority to issue the "Post-Confirmation Injunction."

27    Appellees' fact-laden brief goes far beyond what is relevant to these issues.  There is no

28  relevant dispute over what led to the bankruptcy, over the complexity of the settlement negotiations,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

over the financial contributions being made by the participants, over the comparatively small monetary significance of the Meritage dispute, over the benefits of the Plan for the community, or the benefits of settlement over litigation.  There is not, or is no longer, any relevant issue over whether the involuntary bankruptcy was a good faith filing under the Bankruptcy Code, whether the Plan was proposed in good faith, whether its treatment of Meritage was discriminatory or fair and equitable, whether the Settling Builders breached the Operating Agreement by transacting with the Debtor without a member's consent, whether the Settling Builders could purchase participation interests in JPMorgan's lawsuit against Meritage, or whether the Plan's releases, Exculpation or Post-Confirmation Injunction are proper as to any consenting parties.  To the extent that such issues were in dispute, they were ruled upon and were either not appealed or were dropped from the appeal, in recognition that Meritage could obtain relief on its appeal without attempting to stand in the way of the parties.

When it comes to the merits of the remaining issues, Appellees' brief raises far fewer issues than its heft suggests.

1.     The defense of the Exculpation rests primarily on a theory espoused in a single published decision in a case, *Yellowstone Mountain Club*, in which the Montana district court has already rejected the exculpation as "well beyond the limitation of § 524(e)."  The bankruptcy court responded by re-adopting its original decision and arguing that § 524(e) does not apply.  This unique rationale is jurisdictionally defective and was rejected in the Fifth Circuit's 2009 opinion in *Pacific Lumber*.  The matter is back before the district court, which denied a motion to dismiss the appeal as equitably moot.  Appellees also attribute great weight to (and castigate Meritage for failing to cite) *Station Casinos*, which is an unpublished memorandum of findings and conclusions not found in Westlaw confirming an uncontested plan, citing a plainly inapplicable statute.  Their theories are unsound, and stand in opposition to a wealth of circuit level and lower court authority rejecting such protection for third parties.

2.     The handful of other cases within the Ninth Circuit cited by Appellees as exculpating non-estate parties, mostly unpublished, simply approve in passing uncontested

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

exculpations in unopposed plans, settlements or financing orders.  Given the lack of opposition and the fact that claims of consenting parties may be released, these should carry no weight whatsoever.  None of the cases other than *Yellowstone* involve a situation where any particular conduct was in question; the provisions were purely prophylactic. The relief issued here – extinguishing existing claims – is not "exculpation" in the sense in which the term is used in such cases.  And Appellees' arguments that cases in which exculpations have been limited to estate-affiliated parties should be extended beyond their actual holdings is contradicted by the clear language of the cases.

3.    Appellees present no authority in which the concept of bankruptcy preemption of state law claims has been utilized to justify a broad release of all claims relating to a bankruptcy in litigation between non-debtors, as opposed to a defense to a specific claim based upon some alleged wrongdoing in a bankruptcy case.  There is no "zone of protected conduct" that applies across the board in this factual context.

4.    If exculpation against an objecting party was even available, the findings would not support it here.  For all of its facts, Appellees' brief glosses over the one that alone is fatal to the findings:  the Settling Builders' agreement that bankruptcy court approval of the Plan treatment of the Repayment Guaranty was not essential to their support and participation in the Plan.  A provision cannot be deemed integral, nor can consideration fairly be attributed to it, if the parties did not even insist upon it.  That is why they attempted to withhold it from disclosure.  Nor can they argue that exculpation against Meritage was integral to their negotiations when none of the negotiating parties opposed it.

5.    The bankruptcy court found that the Plan would not have the effect of satisfying the Repayment Guaranty.  This is a defense in the non-bankruptcy guaranty litigation that requires a detailed analysis of the relevant contract provisions.  That did not occur on this issue, as it did in connection with the rulings on breach of the Operating Agreement or the sale of participations in the guaranty litigation (neither of which was appealed).  In precluding it, the bankruptcy court either ruled on the merits of an issue that

P

ACHULSKI

 S

TANG

 Z

IEHL

 & J

ONES

 LLP

A

TTORNEYS AT

 L

AW

S

AN

 F

RANCISCO

, C

ALIFORNIA

APPELLANTS' REPLY BRIEF

1   was not before it – and which the bankruptcy court clearly stated was not before it – or it was

2   granting a non-debtor release.  Either way, the finding must be stricken.

3        6.      Finally, the Appellees' best defense of the Post-Confirmation Injunction is

4   that it does not go beyond what the automatic stay already provides.  This "no harm-no foul"

5   argument is inadequate.  Despite the assurances at the confirmation hearing that it would not

6   bar defenses and offsets, it has language that could be interpreted to do just that.  It should be

7   stricken.

8                                 **II.**

9                            **ARGUMENT**

10  **A.   The Bankruptcy Court Erred in Approving a Release of Third Party Claims Against Non-Debtors**

11

12       **1.      The Exculpation is an Impermissible Release**

13  Appellees begin their defense of the Exculpation by drawing a false distinction between

14  "exculpation" and a release.  There is none.  To exculpate from liability is to release from liability.

15  *Walton v. Houlihan, Lokey, Howard & Zukin (In re UA Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003)

16  involved an identical provision exculpating a financial advisor from liability for any act related to a

17  case, excepting willful misconduct or gross negligence.  *Id.* at 226.  The question was the propriety

18  of the exculpation, and the Third Circuit stated : "The answer depends on how we treat

19  nonconsensual releases of nondebtors."  *Id.* at 227.  The Third Circuit found the justification lacking

20  under its test for such a release (relief that is unavailable *per se* in the Ninth Circuit).[1]  *See also In re*

21  *Congoleum Corp.*, 362 B.R. 167, 195-96 (Bankr. D. N.J. 2007) (rejecting bases of exculpation as

22  inadequate "to support the extraordinary relief of a broad third-party release.").

23       The fact that exculpation is a species of release is exactly why the Third Circuit's opinion in

24  *PWS Holding Company*  is so frequently referenced, because it avoided the problem by justifying the

25  exculpation as doing no more than restating the standard of liability applicable to committee

26  members under § 1103 of the Bankruptcy Code.  *In re PWS Holding Company*, 228 F.3d 224, 246-

27  47 (3d Cir. 2000) ("this standard of liability is the standard that already applies in this situation" and

---

[1] It also rejected the argument that the appeal was equitably moot despite substantial consummation, noting it could modify the provision.  *Id.* at 228; *In re PWS Holding Corp.*, 228 F.3d 224 236-37 (3d Cir. 2000) ("The plan has been substantially consummated, but … [it] could go forward even if the releases were struck.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:251748.2 54578-001                                                        APPELLANTS' REPLY BRIEF

1  thus "does not affect the liability of another entity on a debt of the debtor within the meaning of

2  section 524(e).").  The Third Circuit in *United Artists* observed that the reason it had approved the

3  provision in *PWS* was precisely because "it was not addressing a release that 'affect[s] the liability of

4  third [i.e., non-debtor parties,' *id.* at 247, and thus is 'outside the scope of § 524(e).' "  315 F.3d at

5  227 n. 10 ("in no event does *PWS* cover more than immunity from liability under § 1103(c).").  But

6  that rationale only supports conferring such protection, at most, to persons affiliated with the

7  bankruptcy estate.  That, in turn, explains why, as cited in Meritage's Opening Brief, numerous cases

8  correctly hold that such provisions are limited to estate fiduciaries.[2]

9       It is simply inaccurate for Appellees to assert that courts in the Ninth Circuit have approved

10  "exculpations that are indistinguishable from the one contained in the South Edge Plan," (Appellee's

11  Brief at 27) citing *In re Sanitec Industries, Inc.*, 2009 WL 7809007 *13, 2009 Bankr. LEXIS 4532

12  (9th Cir. BAP 2009), when that case explicitly states: "the exculpation clause was neither overbroad

13  nor overreaching; it did not exculpate any party other than the debtor and did not apply to gross

14  negligence, willful misconduct or fraud.") (emphasis added).  Appellees simply omit the underlined

15  language from their quotation.  Likewise, they invoke *In re Birting Fisheries, Inc*., 300 B.R. 489 (9th

16  Cir. BAP 2003), when the plan in that case did not even contain an exculpation and the discussion

17  concerned the debtor's principal shareholder, not a third party creditor.

18       Appellees' heavy ammunition is *Blixseth v. Yellowstone Mountain Club, LLC* (*In re*

19  *Yellowstone Mountain Club, LLC*), 460 B.R. 254 (Bankr. D. Mont. 2011) in which an identical plan

20  exculpation was approved for the lenders and acquirer.  On its first appeal, the district court held that

21  "[T]he language of [the exculpation], whatever its intended scope may have been, goes well beyond

22  the limitation of section 524(e).  Its approval was plain error.").  *Blixseth v. Yellowstone Mountain*

23  *Club, LLC*, 2010 WL 4371368 *2 (D. Mont. 2010).  On remand, the bankruptcy court re-adopted its

24  original decision, stating:

25

26  [2] *See, e.g., In re Washington Mutual, Inc*., 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (exculpation "must be limited to

27  the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their
   members, and the [d]ebtors' directors and officers."); *In re Tribune Co*. --- B.R. ----, 2011 WL 5142420 *46 (Bankr. D.
   Del. Oct. 31, 2011) (same); *In re PTL Holdings LLC*, 2011 WL 5509031 *12 (Bankr. D. Del. Nov. 10, 2011) ("the

28  exculpation clause here must be reeled in to include only those parties who have acted as estate fiduciaries and their
   professionals").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Unlike the exculpation clauses in *American Hardwoods* and
2    *Lowenschuss*, the exculpation clause . . . does not implicate 11 U.S.C.
     § 524(e). The exculpation clause in the case *sub judice* is not barred by
3    Ninth Circuit Law. The exculpation clause is temporal in nature and
     covers those parties who were closely involved with drafting the
4    Settlement Term Sheet, which became the cornerstone of the Debtors'
     Third Amended Joint Plan of Reorganization. As the testimony
5    clearly shows, without the Settlement Term Sheet, it is doubtful the
     Debtors could have achieved confirmation of a Chapter 11 plan, and
6    indeed it is very likely the Debtors' bankruptcies would have been
     converted to Chapter 7 and the assets liquidated.

7    Given the foregoing discussion, this Court need not correct an
     existing judgment or enter a new ruling and the Debtors need not start
8    the confirmation process anew. The Court adopts in total and ratifies
     its earlier ruling on approval of the Settlement Term Sheet.

9

10   *Yellowstone*, 460 B.R. at 23. A second appeal has been brought and is fully briefed; the district court

11   recently denied a motion to dismiss the appeal as equitably moot. For precedent, the *Yellowstone*

12   decision relies primarily on a lengthy excerpt from *In re Lighthouse Lodge, LLC*, 2010 WL 4053984

13   (Bankr. N.D. Cal. 2010). *Id.* at 22-23.

14   This release of liability except from gross negligence or willful
     misconduct has been extended to plan proponents other than a
15   committee. [citing *In re WCI Cable, Inc.*, 282 B.R. 457
     (Bankr.D.Or.2002)] . . . . Other courts have approved exculpation
16   provisions that limited liability to gross negligence, willful
     misconduct, or breach of fiduciary duty. *See In re PWS Holding*
17   *Corp., supra* (approved exculpation provision releasing debtors,
     reorganized debtors, committee, and their officers, directors,
18   employees, advisors, professionals or agents from liability except from
     willful misconduct or gross negligence); *In re Western Asbestos Co.*,
19   313 B.R. 832, 846–47 (Bankr.N.D.Cal.2003) (approved release
     provision in favor of debtors, committee, futures representative, and
20   their respective agents except for willful misconduct); *In re Firstline*
     *Corp.*, 2007 WL 269086 (Bankr.M.D.Ga.2007) (approved exculpation
21   clause for the debtor, trustee, the committee and its members, and their
     respective advisors, attorneys, consultants or professionals with
22   exception for gross negligence, willful misconduct, or breach of
     fiduciary duty); *In re Enron Corp.*, 326 B.R. 497 (S.D.N.Y.2005)
23   (bankruptcy court approved exculpation provision in favor of debtors,
     creditors' committee, employee committee, trustees, and their
24   respective officers, employees, attorneys, and agents that excluded
     gross negligence or willful misconduct).

25   *Id.* at 22-23 (quoting *Lighthouse Lodge*, 2010 WL at * 7. But *Lighthouse Lodge* approved an

26   exculpation for the lender as plan proponent only as to any liability to the estate: "*the release*

27   *provision is not attempting to release ORIX from liability to creditors*."). Further, as the

28

DOCS_LA:251748.2 54578-001

6

APPELLANTS' REPLY BRIEF

1  parentheticals within the excerpt confirm, every single case cited by *Lighthouse Lodge* also involved

2  exculpations only of parties affiliated with the bankruptcy estate, not creditor plan proponents.[3]

3      The Fifth Circuit rejected the concept relied upon in *Yellowstone* that exculpation of non-

4  debtors from claims of other non-debtors is permissible because the released non-debtors are not co-

5  liable with the debtor.  *In re Pacific Lumber Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009).  In denying

6  approval of a similar exculpation for the benefit of the creditor plan proponents, the Fifth Circuit

7  stated:

8          There are no allegations in this record that either
        MRC/Marathon or their or the Debtors' officers or directors were

9          jointly liable for any of Palco's or Scopac's pre-petition debt.  They are
        not guarantors or sureties, nor are they insurers.  Instead, the essential

10          function of the exculpation clause proposed here is to absolve the
        released parties from any negligent conduct that occurred during the

11          course of the bankruptcy.  The fresh start § 524(e) provides to debtors
        is not intended to serve this purpose.

12

13  *Id*.  "The bankruptcy court can affect only the relationships of debtors and creditor."  *Underhill v.*

14  *Royal*, 769 F.2d 1426, 1432 (9th Cir.1985).  As the *Yellowstone* district court held, the exculpation

15  "goes well beyond the limitation of section 524(e)."  2010 WL 4371368 at *2.

16      Confirming the rule, the Fifth Circuit did approve the same exculpation – but only as applied

17  to the committee and its members – for the very reasons articulated in *PWS*, *i.e.*, because it

18  essentially restates the standard of care, qualified immunity, already afforded to such parties.

19          The Creditors' Committee and its members are the only disinterested
        volunteers among the parties sought to be released here. The scope of

20          protection, which does not insulate them from willfulness and gross
        negligence, is adequate.

21          Consequently, the non-debtor releases must be struck except

22          with respect to the Creditors Committee and its members.

23  *Id*. at 253.  The Settling Builders and JPMorgan were not "disinterested volunteers" and not entitled

24  to the same qualified immunity as the trustee and debtor (both of which owe fiduciary duties to the

25  estate) and their agents.

26

27

28  [3] Appellees point to WCI Cable as exculpating non-debtor parties.  Appellee's Brief at 33.  <u>All of the exculpated parties</u> <u>were affiliated with the bankruptcy estate</u>: "the Debtors, the Reorganized Debtors, the Trustee, the WCIC [sic]. Trust Board and Their Respective Agents.").

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

7

APPELLANTS' REPLY BRIEF

Appellees also place great weight upon *In re Station Casinos, Inc.*, 2010 Bankr. LEXIS 5380 (Bankr. D. Nev.)[4], which is an unpublished memorandum of decision confirming an uncontested plan.[5]  *Station Casinos* cited the advantages of finality and avoiding collateral attacks on parties who supported the restructuring.  *Id*. at *60.  It specifically noted that the exculpation was unopposed: "In connection with the Confirmation Hearing, no party in interest objected to the exculpation provisions of the Plan."  *Id*. at *60 (emphasis added).  The bankruptcy court offered a novel legal justification why the exculpation was not barred by *American Hardwoods* and § 524(e).  It reasoned that the exculpation was supported by § 1125(e) of the Bankruptcy Code, a provision intended to be a safe harbor from the application of federal and state securities laws to plan solicitation.

Section 1125(e) offers no support for exculpations.  It precludes collateral attacks on the adequacy of court-approved disclosure statements under federal and state securities laws.  Section 1125 is entitled "Postpetition Disclosure and Solicitation."  Subsections (a) through (c) require that postpetition solicitation of the acceptance of a plan may only take place after approval of a disclosure statement, and specify the standard for approving a disclosure statement.  Subsections (d) and (e) then provide:

> (d) Whether a disclosure statement required under subsection (b) of this section contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation, but an agency or official whose duty is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information. Such an agency or official may not appeal from, or otherwise seek review of, an order approving a disclosure statement.

> (e) A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

---

[4] Appellees criticize the omission of *Station Casinos* from the brief.  The decision was reported only in Lexis, not Westlaw, and counsel apologizes for its omission.

[5] "No objections to confirmation of the Plan, or any other objections to the terms of the Plan, were filed by any Holder of Claims or Equity Interests or any other party in interest by the deadline established in the Disclosure Statement Order, or otherwise."  *Id*. at *6.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:251748.2 54578-001                                    APPELLANTS' REPLY BRIEF

11 U.S.C. §§ 1125(d)-(e).  Section 1125(e) provides a safe harbor from the application of federal and state securities laws to solicitations for acceptance or rejection of a plan.  See 6 Norton Bankruptcy Law and Practice [3d Ed. 2011] § 110:27 (Safe harbor (Code § 1125(e)) (statute offers protection from liability "for violation of any applicable law governing the solicitation of votes or the offer, issuance, sale or purchase of securities.").  This is made even clearer when it is read in conjunction with subsection (d), which was the legislative intent:  "Subsection (e) is a safe harbor provision, and is necessary to make the exemption provided by subsection (d) effective.  Without it, a creditor that solicited an acceptance or rejection in reliance on the court's approval of a disclosure statement would be potentially liable under anti-fraud sections designed to enforce the very sections of the securities laws from which subsection (d) excuses compliance."  1984 U.S.Code Cong. and Adm. News, p. 576.

The bankruptcy court in *Station Casinos* read section 1125(e) out of context to support broad immunity from any state law for any restructuring activity, pre- or post-petition.  "Section 1125(e) provides a grant of immunity from liability not only under the securities laws, but also under any law, rule, or regulation governing solicitation or acceptance of a plan, to any person that participates in good faith in the solicitation of acceptances of a plan or the offer, issuance, sale or purchase of a security offered or sold in connection with the plan." *Id*. at *95.  In view of the clear intent of the statute, however, utilization of section 1125(e) to support the application of an exculpation to defenses under a guaranty of a loan agreement is an absurd extension of the statute that finds no support in any known caselaw.

In short, the lower court opinion in *Yellowstone* and the *Station Casinos* memorandum are unique and poorly reasoned.  Carrying even less weight are other decisions within the Ninth Circuit cited by Appellees in which unopposed exculpation provisions are mentioned without discussion. *In re Aloha Airlines, Inc*., 2008 Bankr. LEXIS 3971 *12-13 (Bankr. D. Haw. 2008) was an unopposed motion to approve settlement between flight attendants union and trustee, which provided for exculpation of union and members from any claim relating to the settlement. *Id*. at *2. *In re 944 Media, LLC*, 2010 Bankr. LEXIS 3904 (Bankr. C.D. Cal., May 7, 2010) was an unopposed motion to approve a financing agreement, and the exculpation was limited to the lender's acts in collecting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   and enforcing the obligations under the financing agreement.  In those contexts, and generally,

2   "exculpation" means prospective, prophylactic relief in situations where no claims have been

3   asserted.  Thus the fact that such provisions garner no attention where they are uncontested carries

4   no persuasive value.  In a vain quest to find supporting authority, Appellees even cite authority

5   approving exculpation provisions in the Second Circuit – a jurisdiction where nonconsensual non-

6   debtor releases are <u>permissible</u>, and where the exculpation was approved under those standards.

7   Appellee's Brief at 35 n. 15 (citing *In re Delta Airlines, Inc.*, 374 B.R. 516 (Bankr. S.D.N.Y. 2007)).

8   Appellees might as well have cited *In re Airadigm Communications, Inc*., 519 F.3d 640, 655-57 (7th

9   Cir. 2008) in which the Seventh Circuit approved a similar provision – but only by virtue of the

10  difference in law between the Seventh and Ninth Circuits.

11          **2.      Federal Preemption is Not a Basis for a Release**

12          Under Appellees' view of the law, there exists a "zone of protected conduct" – essentially all

13  conduct within a bankruptcy case – that cannot be the basis of any assertion of rights outside of the

14  bankruptcy case.  The result is what occurred here:  the rights of a non-debtor against another non-

15  debtor are frozen in time as of the date that one of them begins participating in another party's

16  bankruptcy case.  Thus, for instance, if an agreement between non-debtors forbade them from

17  entering any contract with a certain competitor, it would not breach that agreement for one of the

18  parties to do it anyway, so as long as it was done in the competitor's bankruptcy case (perhaps as a

19  plan proponent).  Or, as another example, a non-debtor's defenses under a guaranty to another non-

20  debtor could be frozen in time as of the date the latter gets involved in a third party's bankruptcy

21  case, even if events or transactions during the bankruptcy case change the underlying facts on which

22  the calculation of damages under the guaranty is based.

23          These non-intuitive results are not supported by cases in which parties sue each other based

24  on the exercise of fundamental bankruptcy rights on claims for which remedies existed under the

25  Bankruptcy Code.  Appellees rely primarily on three cases to support it: *MSR Exploration v.*

26  *Meridian Oil*, 74 F.3d 910 (9th Cir. 1995); *Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987); and

27  *Miles v. Okun (In re Miles)*, 430 F.3d 1083 (9th Cir. 2005).

28

APPELLANTS' REPLY BRIEF

- *MSR Exploration* found that a malicious prosecution claim was preempted, where the claim was brought by a debtor in state court against a creditor whose claim the debtor had defeated in bankruptcy court, and the debtor had waited until after a plan was confirmed rather than seeking sanctions at the time.  74 F. 3d at 912.

- *Gonzales* found that a state court lawsuit was preempted, where a creditor alleged that the debtor's bankruptcy filing was an abuse of process.

- *Miles v. Okun* found that a state court lawsuit was preempted, where it was brought by a debtor's wife and children for damages against the creditors that filed the involuntary bankruptcy petition, finding that 11 U.S.C. § 303(i) provided an exclusive remedy.  430 F.3d at 1091.

In contrast, at issue here is Meritage's assertion of defenses and offsets to liability on its guaranty of obligations under a credit agreement, and the facts implicated by such claims pertain to the performance of the bank in relation to the credit agreement and the performance of its co-members in relation to their Operating Agreement.  The actors are all non-debtors.  Certain of the conduct occurred before and some occurred during the South Edge bankruptcy case, but Meritage is not attempting to penalize any exercise of bankruptcy rights in the case.  When Meritage asserts that the Plan transactions have the effect under state law of exonerating its guaranty, that is not an attack on the propriety or integrity of the Plan.  Meritage no longer asserts that JPMorgan's involuntary bankruptcy petition was a bad faith filing under the Bankruptcy Code, but that does not mean it was within the spirit of their own preexisting contract or, for present purposes, that such a claim is preempted.  As it turned out, the argument was not deemed relevant to whether the bankruptcy filing was a bad faith filing under the Bankruptcy Code, and so it was certainly not an issue that had to be raised there or not at all.

*In re Extended Stay Inc.*, 435 B.R. 139 (S.D.N.Y. 2010) is exactly on point.  Guarantors alleged that Bank of America's action on their "bad boy" guarantees was preempted because it was tied to their bankruptcy filings:

> Appellants characterize the guarantees and underlying Debtor liabilities as penalties tied to the bankruptcy filing and, citing decisions holding that damages actions or state law penalty provisions based on bankruptcy filings or actions taken within bankruptcy cases are preempted by the Bankruptcy Code, argue that the causes of action based upon the guarantees are completely preempted (and also precluded) by the Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

*Id*. at 147.  As Appellees do here, the guarantors cited *Astor Holdings, Inc. v. Roski*, 325 F.Supp. 2d 251 ( S.D.N.Y. 2003), in which the district court held that the Bankruptcy Code preempted a non-debtor's post-bankruptcy tort claim against a third party that was based on allegations that the third party had induced the debtor to breach a contract and fiduciary duties by filing a bankruptcy case in bad faith or for an improper purpose.  *Id*.  Bank of America responded that "the claims that have been asserted are not preempted because they do not attack the integrity of the bankruptcy filing itself or of actions taken within the bankruptcy proceeding, but rather simply seek enforcement of the guarantors' obligations under their contracts."  *Id*. at 148.  The district court agreed with Bank of America:

> Bank of America seeks recovery pursuant to contracts in which the Defendant–Appellants agreed to backstop a specific liability under the relevant circumstances.  <u>Bank of America does not seek to invoke common law or other extraneous doctrines to label wrongful, or punish, the exercise of rights under the Bankruptcy Code, nor does it question the legal validity or propriety of the Debtors' filings</u>. As the Ninth Circuit recognized in MSR, "preemption assertions are normally matters of defense and will not suffice to establish federal jurisdiction." Id., 74 F.3d at 912. Unlike the plaintiff in that case, which "self-consciously and entirely ... [sought] damages for a claim filed and pursued in bankruptcy court," id., Bank of America seeks the enforcement of contractual obligations.

*Id*. at 149 (emphasis added).  While the roles here are reversed, the principle is the same: these issues do not warrant preemption.  Appellees raise issues previously raised by Meritage, such as the good faith of the filing or of the Plan, and argue that they warrant preemption.  They proclaim: "Notably, Meritage has **not** appealed these findings."  Appellees' Brief at 41 (emphasis in original).  That is exactly the point.  Meritage has **not** appealed issues that would be collateral attacks on the Bankruptcy Court's rulings or that needed to be raised in the bankruptcy case or not at all.

Finally, <u>nothing</u> in any of the cited authority supports a release applicable to any actions taken in connection with the bankruptcy case.  In each and every case cited by Appellees, preemption is raised as a defense to a claim or lawsuit.  Not all challenges to bankruptcy-related conduct could possibly be preempted – yet that is exactly what the Exculpation does.  To this, Appellees do not offer, and cannot offer, any response:  Preemption is not a valid conceptual basis for a blanket release.

3.     **There is No Basis in the Record for the Factual Findings Supporting the § 8.10 Release**

The Order contains the following findings and conclusions in support of all the release provisions <u>collectively, including the releases of the estate's claims the claims of consenting parties</u>:

> (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on . . . [the] Debtor, the Estate, and Holders of Claims against the Debtor, and are important to the overall objectives of the Plan; (iv) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code; [and] (v) are in exchange for valuable consideration. . . .

Tab 8, AE00747 (Order ¶ F. 12). As to the release of the only objecting creditor's claims against the non-debtor, non-trustee releasees, (i) there was no jurisdiction to grant such relief in the Ninth Circuit; (ii) it was not integral to the Plan because it was not a condition to confirmation; (iii) it provided no material benefit to anyone other than the Settling Builders; (iv) it was not consistent with section 105, 524 or 1141; and (v) it was not in exchange for valuable consideration. These conclusions are inescapable. Remarkably, Appellees say nothing about their agreement in the Plan Support Agreement that the Settling Builders would not insist approval of the Plan's treatment of the Repayment Guaranty as a condition to confirmation of the Plan. Ipso facto, that particular provision could not be integral, nor can valuable consideration be allocated to it. The <u>only</u> parties to benefit from the nonconsensual release, in fact, were the Settling Builders, since JPMorgan is to be paid its full amount regardless of the outcome of the guaranty litigation, and the issue is irrelevant to other creditors. That, of course, along with the fact that this issue is the $12 million tail of what they characterized as a $382 million dog, is why the Settling Builders had to agree that approval or non-approval of their treatment of Meritage would not bring down the Plan. Thus there was no basis for these findings <u>as to the non-consensual release of non-debtor claims against non-debtors</u>. The adoption of these factual findings without any evidentiary basis was clearly erroneous, insofar as they are intended to provide the factual support for the injunctions at §§ 8.10 and 8.3 of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**B.    The Court Erred in Ruling that the Plan Treatment Shall Not "Affect" or "Satisfy" Liability on the Guaranties**

This is an important error that must be corrected.  The bankruptcy court found, under the heading "<u>Effect of Confirmation</u>."

> 11.    Other than the four Repayment Guaranties of the Settling Builders, which are being satisfied in full under the Plan, the Plan and its confirmation shall not in any way discharge or otherwise release in any way the Agent's or the sub-Agent's claims under the Guaranties against the Members and Member Affiliates.  *See American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 625-26 (9th Cir.1989); *Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.)*, 113 B.R. 610, 614-17 (9th Cir. BAP 1990).  Nor shall the Plan or confirmation thereof effectuate a release of any Retained Actions against the Members or Member Affiliates, except with respect to (i) the Settling Builders, (ii) the Focus Parties (if the Focus Settlement Agreement that has been approved by the Bankruptcy Court becomes effective), and (iii) Alameda, subject to the terms of the settlement described on the record at the Confirmation Hearing and to be filed with the Bankruptcy Court.  **The Plan's treatment of the Class S3 and U1 Claims will not** *affect* **the Meritage Parties' liability on their Repayment, Completion, and Limited Guaranties, which are not being** *satisfied* **or released under the Plan**.  *See American Hardwoods*, 885 F.2d at 625 ("'Generally, discharge of the principal debtor in bankruptcy will not discharge the liabilities of codebtors or guarantors . . . .'") (quoting *Underhill v. Royal*, 769 F.2d 1426 (9th Cir. 1985)); *see also* Meritage Repayment Guaranty § 2(a) ("the obligations of the Guarantor hereunder shall not be reduced by amounts paid by any other guarantor"); *id* §§ 3 & 4 (the obligations of the Meritage Parties under the Repayment Guaranty are absolute and irrevocable); *id*. § 16 ("any Lender may assign, sell participations in or otherwise transfer its rights under the Facilities [as defined in the Prepetition Credit Agreement] to any other person or entity on and subject to the terms set forth in the [Prepetition] Credit Agreement, and the other person or entity shall then become vested with all the rights and benefits granted to the Lenders in this Guaranty or otherwise").

Tab 8, AER00764-765 (Order ¶ C. 11) (emphasis added).

**1.    Meritage Does Not Seek a Release, But a Hearing on the Merits of its Defense**

Appellees argue that in seeking to strike the highlighted language, Meritage is effectively seeking the very type of release from non-consenting non-debtors that it complains is inappropriate as to the Exculpation.  That is incorrect.

On October 26, 2011 (the day before the Order on appeal was entered), Meritage filed in this Court its *Meritage Homes Corporation's and Meritage Homes of Nevada, Inc.'s Response to*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:251748.2 54578-001                                                                 APPELLANTS' REPLY BRIEF

*Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment* (Docket No. 39).  Meritage's defenses included, in relevant part, following arguments: (1) The Repayment Guaranty Will Terminate if the Plan is Confirmed (at p. 22); and (2) The Plan Modifies the Underlying Contract, Thereby Releasing Meritage From its Obligations Under the Repayment Guaranty (at p. 38).  There were several sub-arguments, including: (a) that the Plan was satisfying the underlying obligation under section 2(c) of the Repayment Guaranty; (b) that the Plan constitutes an asset sale that changes its treatment under the Repayment Guaranty; (c) the Plan restructures the underlying obligation in a manner that fundamentally changes Meritage's risk and so under New York law releases the guarantor from its obligations that under the Repayment Guaranty; and (d) Meritage was only liable for its "Guaranteed Share", which under the contract is defined as:

> a fraction, stated as a percentage, having as its numerator the aggregate amount of the Release Prices of all Phases to be acquired, but not yet acquired, by the Member Guarantor under its Acquisition Agreement and as its denominator the aggregate the Release Prices of all Phases of the Project to be acquired, but not yet acquired, by all Members who are not Released Guarantors (including the Member Guarantor) under their respective Acquisition Agreements." [Seay Decl. ¶ 31 (Ex. 7 at 16).]  In light of sale of all of South Edge's assets to the Settling Members, there are no "Phases to be acquired, but not yet acquired, by" Meritage Nevada, nor are there "Phases of the Project to be acquired, but not yet acquired, by all Members." Additionally, the Acquisition Agreements are terminated as part of the Plan.  Consequently, either the numerator, the denominator or both are zero in the calculation and Meritage's Guaranteed Share is also zero.

These "satisfaction defenses" were not briefed, argued and decided on their merits at the confirmation hearing.  New York law was not applied, as it must be (and as the bankruptcy court indicated it would be).  The *post facto* inclusion of contract provisions into the Order cannot replace briefing and argument on such issues, and they are not responsive to all of the issues raised above. In contrast, other issues were presented properly and decided:  for example, the bankruptcy court looked in detail at the provisions of the Operating Agreement and Credit Agreement in deciding that the Plan did not breach the Operating Agreement, and counsel specified that the Plan could not be found to be in good faith unless the bankruptcy court found that the Operating Agreement had not been breached. Tab 7, AER00633:11:15.  The bankruptcy court also looked at provisions of the Credit Agreement and Repayment Guaranty in deciding in the context of its good faith finding that it

was permissible for JPMorgan to sell participation interests in its enforcement action.  But the bankruptcy court never, for example, looked at how the definition of "Guaranteed Share" might be affected by the Plan.

It is not enough for Appellees to state magnanimously that "[t]o be clear, the Bankruptcy Court did not hold that Meritage was liable on its Repayment Guaranty" and point to other defenses that were not decided.  Appellees' Brief at 43.  Meritage is entitled to have <u>this</u> defense heard on its merits, not precluded by a finding that was never litigated.

Indisputably, striking the language in the Order that the Plan shall not *affect* or *satisfy* Meritage's liability on its Repayment Guaranty does <u>not</u> grant Meritage a release.  It is not a discharge of JPMorgan's claims against a non-debtor, in violation of § 524(e); it merely preserves these defenses for decision on the merits.  By nature, a release is a means of <u>avoiding</u> a determination on the merits.  The Exculpation is a release.  This finding is also a *de facto* release if it is allowed to stand, inasmuch as it precludes a decision on the merits.

**2.     The Merits of These Defenses Were Not Before the Court**

<u>First</u>, the Plan did not require the Court to decide Meritage's "satisfaction defenses."  There was no provision in the Plan stating that confirmation would constitute a finding that the Plan would not affect or satisfy the Repayment Guaranty, nor was it a condition to any finding required for confirmation of the Plan for the bankruptcy court to rule on the effect of the Plan on Meritage's Repayment Guaranty under applicable state law.  The Plan Support Agreement reflects that there was no intent by the Plan Proponents that the Plan must contain the sentence concerning "affecting" or "satisfying" Meritage's guaranty obligations.  Even if the parties so intended, they did not actually incorporate any such provision into the Plan.[6]  It appears, in fact, that the objectionable sentence was inserted as a response to arguments made in the guaranty litigation in this Court a day earlier.

---

[6] Paragraph 18(a) contemplated only that the Plan will request a ruling that "Meritage's Repayment, Limited and Completion Guaranties shall not be released, but rather shall remain fully enforceable against the Meritage Parties."  That corresponds to the first sentence in paragraph 11 above, *i.e.*, the non-release of JPMorgan's claims, not to the "*affect*" or "*satisfy*" modifiers that follow.  ***Moreover***, paragraph 18(b) of the Plan Support Agreement is clear that approval of such a provision is not required for the Order to be acceptable to the Plan Proponents.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

**Second**, it is incorrect that the bankruptcy court was simply determining the effect of the Plan in accord with prior pronouncements.  That is a distortion of the record.  Appellees trumpet that Meritage fails to acknowledge anywhere the bankruptcy court's statement that:

> THE COURT:  I think the issue under bankruptcy law is the effect, if any, of confirmation of this plan on their rights vis-à-vis the repayment guarantee or any other obligation as to any other nondebtor.

Appellees' Brief at 45; TAB 7; AER00559:1-5.  But the import of this statement is the <u>opposite</u> of its characterization by Appellees.  The bankruptcy court was indeed examining the effect of the Plan, <u>but only to ensure that it would not affect Meritage's rights except as necessary to confirmation</u>.

> THE COURT: I understand that you have nonbankruptcy disputes with the other builders including the settling builders and with Chase or JPMorgan Chase.  But, again, I don't hear you disagreeing with my position that *the issue is whether or not those rights are affected by any proposed confirmation order as opposed to having to determine or estimate what those claims are for purposes of entering a confirmation order*.

Tab 7, AER00578:18-25.  To prove the point, the passage cited by Appellees follows by only a few pages counsel's explicit concession that this satisfaction issue would be decided in another court, even as they complained that it would be a windfall:

> MR. ENGEL: That's exactly right, your Honor, and there's no right intended anywhere in the plan or in the related documents that intends that Meritage get its windfall forgiveness without payment which is what they're seeking.

> THE COURT: I appreciate it, and this may be more a question for Mr. Shaffer than for you, but your position is, listen, *if New York law when it ultimately is brought to a court of competent jurisdiction says that the procedures used today or proposed to be used today by the plan proponents exonerates their guarantee so be it*.

> MR. ENGEL: *So be it*.

> THE COURT: Right. That's a risk the settling builders are taking.

> MR. ENGEL: That's a risk that they took. We think it's a small risk, but that's the risk they took.

Tab 7, AER00555:12-23.

It is not "cherry-picking" to demonstrate that both the bankruptcy court and counsel made clear that certain defenses would be preserved for other courts to determine.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

THE COURT:  ***In my mind, the issue is whether or not whatever claims they have are preserved not whether they have any to begin with***, and I think it would be a fool's errand to try and prove that they had none or that the ones that they have are absolute winners; otherwise, my experience would be is that they would have been worked out by now.

Tab 22, AER01652:8-12.

THE COURT: -- I know I'm going to come out -- regardless of whether I confirm this plan or not, I will leave the bench knowing that there are significant disputes between JPMorgan and Chase (sic) -- excuse me -- between Chase and Meritage that ***I will not resolve nor do I have the power to resolve nor would I want to resolve nor -- and to be final on it, that I need to resolve I think in order to confirm or not confirm this plan.***

*Id*. at AER00503:4-11.  This includes Meritage's defense that JPMorgan was not entitled to trigger the default on the Repayment Guaranty:

MR. SHAFFER: Meritage could also argue -- again, I don't think they would prevail, but they could argue that as an interpretation of the guarantee the guarantee should not be triggered by an involuntary cause by the lenders. Nobody is saying that the plan precludes that. They have not pointed to any provision in the plan that says that from now forth Meritage will not be able to argue that JPMorgan's commencement of an involuntary case was not a triggering event under the guarantee. There's nothing in the Plan that says that.

Tab 7, AER00630:17-00631:1.

MR. SHAFFER: And with respect to the involuntary issue to go back to Ohio for a moment, to the extent that Meritage argues that the involuntary does not trigger the guarantee, that's a defense that is preserved.

THE COURT: Well, actually, I think they're --

MR. SHAFFER: But to --

THE COURT: I think that --

MR. SHAFFER: -- the extent --

THE COURT: Well, right.

MR. SHAFFER: Oh --

THE COURT: I mean, their --

MR. SHAFFER: -- yeah.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:251748.2 54578-001

APPELLANTS' REPLY BRIEF

1   THE COURT: Their argument was -- I mean, it's a standard of the prevention doctrine that you can't put in a default that's solely within your control and then control it such that the default occurs.

2

3   MR. SHAFFER: And they can argue that –

4   THE COURT: Right.

5   Tab 7, AER00643:4-21

6   In sum, the issue was not decided by the Court, both by the Court's decision and by the

7   concession of counsel.  In fact, the issue was raised just the day before in the action in this Court.  A

8   decision **on the merits of the satisfaction defense** should not have been made by inserting a finding

9   that had an effect far greater than Appellees' stated intent to ensure only that the Plan did not

10   *"release"* the Repayment Guaranty.  To do so does not afford process.  *In re Ball*, 2008 WL

11   8444789 *1 (9th Cir. BAP 2008) ("because the bankruptcy court conflated the Motion to Reconsider

12   with the issue of whether the promissory note consisted of property of the estate or belonged to Ball,

13   without allowing Ball to brief that issue or present any admissible evidence supporting his position,

14   we VACATE the portion of the court's decision that extinguished Ball's interest in the note, if any");

15   *In re Hayes*, 2008 WL 8444812 *5 (9th Cir BAP March 31, 2008) (no due process where "there was

16   no indication in the PTO that the bankruptcy court would comprehensively address or examine the

17   nature and extent of the rights of the parties under the various Restrictive Covenants, nor that it

18   would grant the sort of relief specified in the Additional Orders.").

19   **C.       The Court Erred in Granting a Post-Confirmation Injunction and Discharge**

20   The Plan Sponsors readily concede that the Debtor is liquidating and so is not entitled to a

21   discharge.  11 U.S.C. § 1141(d)(3).  To justify the § 8.3 Post-Confirmation Injunction and

22   Discharge, they argue that the automatic stay of § 362 of the Bankruptcy Code remains in effect as

23   to assets that are retained while the estate is liquidating, discussing *Hillis Motors v. Hawaii Auto.*

24   *Dealers' Ass'n (In re Hillis Motors)*, 997 F.2dc 581, 587 (9th Cir. 1993).

25   None of that is disputed.  It is incorrect, however, that the language of § 8.3 is no broader

26   than the automatic stay.  The automatic stay prohibits, without elaboration, the commencement or

27   continuation of proceedings against a debtor that were or could have been brought prepetition, the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

enforcement of judgments, acts to obtain or control property, acts to perfect liens, acts to collect on prepetition claims, or setoffs of any debt owed to the debtor against prepetition debts.[7]

The Post-Confirmation Injunction, by comparison, provides:

> [A]ll Entities shall be barred from asserting against the Debtor, the Estate, or the Reorganized Debtor, or their respective successors or property, any other or further Claims, demands, debts, rights, Causes of Action, liabilities, or Equity Interests based upon any act, omission, cause, transaction, state of facts, or other activity of any kind or nature that occurred prior to the Effective Date.

Tab 17, AER01241 (Plan § 8.3).  It bars the assertion of "rights" that arose post-petition, as well as prepetition.

The assertion that such language is "consistent with (and certainly no broader than) the automatic stay" (Appellees' Brief at 48) is simply wrong.  Were that true, there would be no need for the injunction, since the automatic stay is imposed by statute.  The application of the injunction to post-petition rights, not just the prepetition rights covered by the automatic stay, is exactly why it exists and why Appellees want to impose it upon Meritage, as their counsel confirmed:  "We think that that will reduce the chance of mischief of people arguing about, you know, wrong party asserting the claims or new defenses because of an assignment of those claims or something of that matter."  Tab 7, AER00648:14-17.  As they do with exculpations, Appellees cite text from various cases in which plans were confirmed with such provisions, none of which were contested.  That is likely because, unlike here, the intent was not to impair the rights of a specific litigant.

Finally, Appellees suggest that Meritage's grievance somehow rests on a blurring of the corporate distinction between Inspirada Builders and the Settling Builders, and so cannot stand without evidence that the corporate separateness should be disregarded.  Appellees' Brief at 50.  How the concept of corporate separateness relates to this objection is unclear and unexplained.  It

---

[7] Abbreviated and in relevant part, § 362(a) prohibits: "(1) the commencement or continuation … of a[n] … action … against the debtor that was or could have been commenced [prepetition] or to recover a claim against the debtor that arose [prepetition]; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained [prepetition];(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any [prepetition] lien ….; (6) any act to collect, assess, or recover a [prepetition] claim against the debtor….; (7) the setoff of any debt owing to the debtor that arose [prepetition] against any claim against the debtor. . . ." 11 U.S.C. § 362(a).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF

does not justify imposing a Post-Confirmation Injunction that is a temporary section 1141 discharge injunction and not the section 362 automatic stay.  It should be stricken.

### III.

### <u>CONCLUSION</u>

The bankruptcy court erred in: (1) granting the § 8.10 "Exculpation"; (2) granting the § 8.3 "Post-Confirmation Injunction and Discharge"; and (3) making the conclusion of law at C. 11 of the Order.  These errors can be addressed by directing that the following language be stricken from the Order and/or Plan, as applicable: (a) Plan § 8.10 and  Order ¶¶ E.6 and H.13 (Exculpation); (b) Plan § 8.3 and Order ¶ C. 2 (Post-Confirmation Injunction and Discharge); and (c) ¶ C. 11 of the Order, from the beginning of the following sentence through the conclusion of the paragraph: "The Plan's treatment of the Class S3 and U1 Claims will not *affect* the Meritage Parties' liability on their Repayment, Completion, and Limited Guaranties, which are not being *satisfied* or released under the Plan."


Dated:   March 9, 2012                    PACHULSKI STANG ZIEHL & JONES LLP


                                          By    */s/ Harry Hochman*
                                          _____
                                                 Ira D. Kharasch
                                                 Harry Hochman


Dated:   March 9, 2012                    FENNEMORE CRAIG, P.C.


                                          By    */s/ Craig S. Dunlap*
                                          _____
                                                 Laurel E. Davis
                                                 Craig S. Dunlap


                                          Attorneys for Appellants, Meritage Homes
                                          of Nevada, Inc. and Meritage Homes
                                          Corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

APPELLANTS' REPLY BRIEF