

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

In re SOUTH EDGE LLC,                )
                                     )
          Debtor.                    )
                                     )
_____)        2:11-CV-01963-PMP-PAL
                                     )
MERITAGE HOMES OF NEVADA, INC.       )
and MERITAGE HOMES                   )
CORPORATION,                         )
                                     )
          Appellants,                )
                                     )
 v.                                  )               OPINION
                                     )
JPMORGAN CHASE BANK, N.A., et al.,   )
                                     )
          Appellees.                 )
_____)

Before the Court is Appellants Meritage Homes of Nevada, Inc. and Meritage

Homes Corporation's (collectively, "Meritage") appeal of the bankruptcy court's Order

Confirming Joint Plan of Reorganization ("Confirmation Order") for the Debtor, South

Edge, LLC ("South Edge").  Specifically, Meritage challenges the Confirmation Order's

approval of exculpation and post-confirmation injunction provisions.  Meritage also

challenges language in the Confirmation Order which states a Repayment Guaranty which

Meritage executed is not satisfied or released through confirmation.

          Appellees JPMorgan Chase Bank, N.A. ("JPMorgan"); and KB Home, Inc.; KB

Home Nevada, Inc.; Toll Brothers, Inc.; Coleman-Toll Limited Partnership; Beazer Homes

USA, Inc.; Beazer Homes Holdings Corp.; Weyerhauser Real Estate Company; and Pardee

Homes of Nevada, Inc. (collectively, the "Settling Builders"), move to dismiss the appeal as

moot.  (Appellees' Mot. for Dismissal of Appeal (Doc. #17).)  JPMorgan and the Settling Builders also oppose Meritage's appeal on the merits.

**I.  BACKGROUND**

        The following factual background is derived largely from the statement of facts as recited by the bankruptcy court in the Confirmation Order and the Declaration of Cynthia Nelson, Chapter 11 Trustee, in Support of Confirmation of the Plan of Reorganization, as incorporated in the Confirmation Order.  (AER Tabs 12, 17.)  Debtor South Edge is a limited liability company that owns a real estate development known as Inspirada.  (AER Tab 12 at ¶ 10.)  South Edge was a joint venture by eight builders who are South Edge's members:  KB Home Nevada, Inc.; Coleman-Toll Limited Partnership; Pardee Homes of Nevada; Beazer Homes Holdings Corp.; Meritage; Focus South Group, LLC; Alameda Investments, LLC; and Kimball Hill Homes Nevada, Inc.  (Id. at ¶ 12.)

        To fund the Inspirada project, South Edge took out loans ("Prepetition Loans") in the aggregate amount of $585 million pursuant to a Credit Agreement under which JPMorgan acts as Agent for the other prepetition lenders.  (Id. ¶ 13.)  As security for the loans, JPMorgan and the other prepetition lenders obtained liens on virtually all of South Edge's real and personal property.  (Id.)  Additionally, each South Edge member and its respective parent signed guaranties in favor of JPMorgan as Agent under the Credit Agreement.  Specifically, each member and its respective parent signed a guaranty of the completion of certain improvements on the Project (the "Completion Guaranty"), limited guaranties for certain fraudulent or unlawful acts (the "Limited Guaranty"), and a guaranty that the members and parents would be responsible for repaying South Edge's obligations in the event of the voluntary or involuntary bankruptcy of South Edge (the "Repayment Guaranty").  (AER Tab 15 ¶ 12.)

        In the spring of 2008, work at Inspirada came to a halt as a result of the insolvency of two of the builder members, disputes among the builder members, disputes

between the builder members and the prepetition lenders, and South Edge's default on its obligations under the Credit Agreement.  (Id. at ¶ 15.)  The result has been a slew of legal actions filed in this Court and elsewhere, including this involuntary chapter 11 bankruptcy proceeding which some of the prepetition lenders initiated against South Edge.  (AER Tab 9, Tab 15 at ¶¶ 19-25.)  JPMorgan, as Agent for the prepetition lenders, moved for the appointment of a bankruptcy trustee.  The bankruptcy court granted the motion, and the Office of the United States Trustee designated Cynthia Nelson (the "Trustee") to serve as South Edge's trustee.  (AER Tabs 10, 23, 24.)

After an unsuccessful appeal to this Court of the order appointing the Trustee, JPMorgan and the Settling Builders (collectively the "Plan Proponents") entered into a Plan Support Agreement.  Pursuant to the Plan Support Agreement, the Plan Proponents agreed to become joint proponents of a proposed plan of reorganization which would settle various lawsuits among the interested parties as well as provide for an exit from bankruptcy.  (AER Tab 12.)  More than 92% in dollar amount of the prepetition lenders consented to the Plan Support Agreement.  (Id. at ¶ 40.)  The Trustee also consented to the Plan Support Agreement.  (Id. at ¶ 17.)  The Plan Proponents thereafter filed the Joint Plan of Reorganization Proposed by JPMorgan Chase Bank, N.A., as Administrative Agent Under the Prepetition Credit Agreement, and the Settling Builders (the "Plan").  (AER Tab 2.)  Every secured and unsecured creditor who returned a ballot supported the Plan, as did seven of South Edge's eight members.  (AER Tab 8 at 8-9 ¶ 1.)  Only Meritage filed objections to the Plan and the proposed confirmation order.  (AER Tabs 3-4, 19.)  After holding a hearing on Meritage's objections at which various witnesses testified, the bankruptcy court overruled the objections and confirmed the Plan.  (AER Tabs 6-8, 22.)

The Plan generally provides for the Settling Builders to contribute approximately $330 million to pay administrative expenses, secured claims, and general unsecured claims against the estate, and to fund various expenses related to future development of Inspirada.

(AER Tab 8 at 21 ¶ 14.)  In exchange, the prepetition lenders agreed to release the Settling Builders for amounts owed under the Credit Agreement and various guaranties by the Settling Builders and their parents, despite the fact that this would leave a deficiency of approximately $47 million owed to the prepetition lenders under the Credit Agreement.  (Id. at 10-11 ¶ 4 & n.1, 21 at ¶ 14.)  Under the Plan, South Edge's assets are transferred to an Acquirer, a new entity formed by the Settling Builders.  (Id. at 13 ¶ 6.)  However, the South Edge estate retained some assets following confirmation, including certain litigation claims (the "Retained Actions").  (Id. at 14 ¶ 9.)  The estate is to continue only for as long as is necessary to complete the administration of the estate, and South Edge will be dissolved upon final administration of the estate.  (Id. at 13 ¶ 7.)

        The Plan contains a provision through which the Settling Builders, rather than the prepetition lenders, assumed the risk of collecting on Meritage's Repayment Guaranty.  Pursuant to section 3.4(f) of the Plan, the Settling Builders contributed over $12 million to be placed in an escrow account.  (AER Tab 2 at 328.)  The amount deposited had to be "equal to the amount of the Meritage Repayment Guaranty liability as of the Effective Date."  (Id.)  Thereafter,

> [a]ny Prepetition Lender . . . may elect . . . . to assign to the Settling Builders a participation in the assigning Prepetition Lender's pro rata interest in the Meritage Repayment Guaranty claim under the Prepetition Credit Agreement, and in exchange for the assignment of such participation, the assigning Prepetition Lender's pro rata interest in the Meritage Repayment Guaranty Escrow shall be delivered to such Prepetition Lender on the Effective Date.  To the extent that any portion of the Meritage Repayment Guaranty Escrow is not paid to electing Prepetition Lenders, then such amount . . . shall be disbursed to the Acquirer.
>         By electing to assign a participation in the Meritage Repayment Guaranty claim, the electing Prepetition Lender agrees to direct (consistent with the instructions of the Settling Builders) a sub-Agent . . . to pursue and, if instructed by the Settling Builders, settle the litigation concerning the Meritage Repayment Guaranty claim, which litigation shall be funded and directed solely by the Settling Builders, and the electing Prepetition Lenders shall be relieved of any obligation, financial or otherwise, including indemnity or expense reimbursement, with respect to any such litigation.

(Id.)

The Plan also contained a post-confirmation injunction as well as several releases and exculpation clauses.  Specifically at issue in this appeal are provisions which provide for a post-confirmation injunction in section 8.3, and an exculpation clause in section 8.10. Section 8.3 of the Plan provides:

> Because the Debtor will be liquidating its Assets, the Debtor will not receive a discharge under this Plan.  However, until all remaining Assets of the Reorganized Debtor and the Estate are administered, and except as otherwise provided in this Plan or the Confirmation Order, all Entities shall be barred from asserting against the Debtor or the Reorganized Debtor, or their respective successors or property, any other or further Claims, demands, debts, rights, Causes of Action, liabilities, or Equity Interests based upon any act, omission, cause, transaction, state of facts, or other activity of any kind or nature that occurred prior to the Effective Date.

(Id. at 345.)  However, pursuant to section 8.2, confirmation shall not "prejudice any party's ability to assert defenses to . . . Retained Actions," except "that confirmation of the Plan shall constitute a final determination by the Bankruptcy Court . . . that the proposing, confirmation, and consummation of the Plan by each of the Plan Proponents was in good faith and in accordance with law."  (Id.)  The exculpation clause in section 8.10 provides:

> None of (a) the Debtor, the Reorganized Debtor, or the Estate Representative, (b) the Agent, (c) the Consenting Prepetition Lenders, (d) the Settling Builders, (e) the TIP Loan Lenders, (f) the Trustee, and (g) with respect to each of the foregoing Entities, their respective directors, officers, employees, agents, representatives, shareholders, partners, members, affiliates, attorneys, investment bankers, restructuring consultants, and financial advisors in their capacities as such (collectively, the "Exculpated Parties"), shall have or incur any liability to any Entity for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the Disclosure Statement, or any contract, instrument, release, or other agreement or document entered into during the Chapter 11 Case or otherwise created in connection with this Plan; provided, however, that nothing in this Section 8.10 shall be construed to release or exculpate any Exculpated Party from (i) its obligations set forth in this Plan, or (ii) willful misconduct or gross negligence as determined by a Final Order.

(Id. at 350-51.)

5

In confirming the Plan, the bankruptcy court noted that South Edge was not entitled to a discharge because it was liquidating.  (AER Tab 8 at 26 ¶ 1.)  However, because some assets would remain with the estate following confirmation, including some litigation claims, the injunction in section 8.3 served to implement the protections of the automatic stay in 11 U.S.C. § 362, which would continue to apply to the estate assets post-confirmation.  (Id.)  The bankruptcy court concluded the post-confirmation injunction provisions were "of limited duration and protect only the Debtor and its Estate through the completion of the liquidation of the Estate's assets, at which time the Debtor will be dissolved."  (Id. at 26-27 ¶ 1.)

The bankruptcy court found the exculpation clause and other releases in the Plan:

> (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interest of, the Plan Proponents, Debtor, the Estate, and Holders of Claims against the Debtor, and are important to the overall objectives of the Plan; (iv) are consistent with sections 105, 534, 1123, and 1141 and other applicable provisions of the Bankruptcy Code; (v) are in exchange for valuable consideration; and (vi) were properly noticed to Holders of Claims and Equity Interests.

(Id. at 15 ¶ 12.)  Specifically with respect to the exculpation clause in section 8.10, the bankruptcy court found the clause:

> establish[es] a standard of care within this Chapter 11 Case, and [is] thus consistent with the rule in this Circuit that actions taken by parties in furtherance of a federal bankruptcy case are governed exclusively by federal bankruptcy law.  Moreover, this Court has exclusive jurisdiction over such actions, which may not be collaterally attacked in a non-bankruptcy forum.  There is a compelling need for Section 8.10 of the Plan, because the Meritage Parties already brought actions against the Plan Proponents in non-bankruptcy forums based upon actions they have taken in this Chapter 11 Case.

(Id. at 15 ¶ 13.)

The Confirmation Order also contained language to which Meritage objects with respect to Meritage's Repayment Guaranty.  Specifically, Meritage challenges the bankruptcy court's ruling that the Plan's "treatment of the [prepetition lenders secured] and

1  [unsecured deficiency] Claims will not affect the Meritage Parties' liability on their

2  Repayment, Completion, and Limited Guaranties, which are not being satisfied or released

3  under the Plan." (Id. at 33 ¶ 11.)

4          Meritage now appeals the bankruptcy court's Confirmation Order.  JPMorgan

5  and the Settling Builders respond by moving to dismiss the appeal as equitably moot.

6  JPMorgan and the Settling Builders argue Meritage neither sought nor obtained a stay, and

7  the Plan since has been substantially consummated through a series of transactions,

8  including the payment of millions of dollars.  JPMorgan and the Settling Builders contend

9  the Plan cannot be unwound, and Meritage cannot pick and choose the Plan provisions it

10  wants to strike where the Plan involves a multitude of complex, interrelated promises.

11  Meritage opposes the motion to dismiss, arguing that it was not required to obtain a stay so

12  long as the Court still may grant effective relief.  Meritage contends the Court can do so

13  here because it may strike the offending provisions without affecting third party rights, and

14  there is no evidence of third party reliance or prejudice.

15          On the merits of the appeal, Meritage contends that a bankruptcy plan cannot

16  release the liability of nondebtor third parties over the objection of another interested party.

17  Meritage thus contends the Plan cannot release through the exculpation clause in section

18  8.10 Meritage's claims or defenses against JPMorgan in pending nonbankruptcy litigation.

19  According to Meritage, an exculpation clause cannot extend beyond the debtor, its estate,

20  and any estate fiduciaries.  Meritage also contends there is no basis in the record to support

21  the bankruptcy court's factual findings with respect to the exculpation clause.

22          Additionally, Meritage challenges the post-confirmation injunction in section 8.3,

23  arguing it effectively grants South Edge a discharge to which it is not entitled under the

24  Bankruptcy Code.  Meritage also contends it improperly cuts off Meritage's defenses

25  against any claim South Edge may assert against Meritage.

26  ///

Finally, Meritage argues the bankruptcy court erred by ruling that the Plan does not affect or satisfy Meritage's liability under the Repayment Guaranty.  Meritage contends that issue is to be decided by nonbankruptcy courts which will address whether the Plan's provisions affect or satisfy Meritage's Repayment Guaranty as a matter of state law. Meritage further argues that if the bankruptcy court was going to decide this issue, it should have provided Meritage with notice so Meritage would have an opportunity to address the matter on the merits.  According to Meritage, the bankruptcy court denied it was going to make such a finding.

JPMorgan and the Settling Builders respond that the exculpation clause is consistent with controlling authority which bars state law lawsuits based on actions taken in a bankruptcy case.  JPMorgan and the Settling Builders contend that federal preemption principles support this position, because the bankruptcy court has exclusive jurisdiction over the actions taken during and in furtherance of a bankruptcy proceeding.  As to the post-confirmation injunction in section 8.3, JPMorgan and the Settling Builders argue the clause does nothing beyond stating the basic principle that South Edge's creditors have only the rights set forth in the Plan, and such a provision is common where an estate will remain open post-confirmation until certain estate assets are administered.  They deny that section 8.3 cuts off defenses, such as setoffs, which Meritage may have in response to any claim South Edge would bring against Meritage.

Finally, JPMorgan and the Settling Builders contend the bankruptcy court did not err in ruling the Plan does not affect or satisfy Meritage's Repayment Guaranty because the ruling was consistent with controlling authority that discharge of a debtor does not discharge guarantors.  Additionally, they argue the ruling is consistent with Meritage's Repayment Guaranty, which states it is not reduced by other guarantors satisfying their guaranty obligations.  According to JPMorgan and the Settling Builders, the bankruptcy court stated that it would not decide the merits of Meritage's obligations under the

Repayment Guaranty, such as whether Meritage's tender of performance in the spring of 2008 satisfied its obligations under the Repayment Guaranty.  However, the bankruptcy court made clear that it would decide the effect confirmation of the Plan would have on Meritage's Repayment Guaranty under bankruptcy law.  Moreover, Appellants contend the ruling is correct factually, as Meritage paid nothing to settle its claim and could not expect a windfall from the Settling Builders' agreement to settle.

**II.  MOTION TO DISMISS APPEAL (Doc. #17)**

Bankruptcy appeals become moot in two ways.  First, an appeal becomes constitutionally moot when the Court cannot fashion effective relief.  Focus Media, Inc. v. Nat'l Broad. Co., Inc., 378 F.3d 916, 922 (9th Cir. 2004).  The "classic example" of constitutional mootness in a bankruptcy appeal "is a case in which the debtor has failed to seek a stay of foreclosure and the debtor's property has been sold.  The transfer to a third party precludes meaningful relief."  Baker & Drake, Inc. v. Pub. Serv. Comm'n, 35 F.3d 1348, 1351 (9th Cir. 1994).  This form of constitutional mootness has been codified in section 363(m) of the Bankruptcy Code.

An appeal also may become "equitably moot" when a "comprehensive change of circumstances may make it inequitable to consider the merits of the appeal and prevents [a court] from fashioning effective relief."  Ederel Sport v. Gotcha Int'l L.P., 311 B.R. 250, 254 (9th Cir. BAP 2004).  To determine whether an appeal is equitably moot, the Court first looks at whether the appellant sought a stay, "for absent that a party has not fully pursued its rights."  In re Thorpe Insulation Co., 677 F.3d 869, 881 (9th Cir. 2012).  However, failure to seek or obtain a stay does not automatically result in equitable mootness.  See id. at 881 ("If Appellants here have presented appellate claims that can be remedied by some reasonable means without totally dislodging the § 524(g) plan, it would be inequitable to dismiss their appeal on equitable mootness grounds merely because the reorganization has proceeded."); In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002) (holding appeal

was not equitably moot even though the appellant did not seek a stay); In re Filtercorp, Inc., 163 F.3d 570, 576-78 (9th Cir. 1998) (holding that appeal of summary judgment order was not equitably moot despite the appellant's failure to seek or obtain a stay).

The Court also evaluates whether the plan has been substantially consummated. Thorpe, 677 F.3d at 881.  The Bankruptcy Code defines "substantial consummation" of a plan as:

> (1) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (2) as assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (3) commencement of distribution under the plan.

11 U.S.C. § 1101(2).  If "many intricate and involved transactions" called for by the plan have been "so far implemented that it is impossible to fashion effective relief for all concerned," an appeal may be equitably moot.  In re Roberts Farms, Inc., 652 F.2d 793, 797 (9th Cir. 1981).

Additionally, the Court considers whether a remedy for the appellant affects third parties not before the Court.  Thorpe, 677 F.3d at 881.  For this factor, "the question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do so in a way that does not affect third party interests to such an extent that the change is inequitable."  Id. at 882.

Finally, and "most importantly," the Court considers whether "the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court."  Id. at 881, 883.  In considering this factor, the Court should be mindful that where the bankruptcy court could grant some relief, even if such relief is incomplete, the appeal is not equitably moot.  Id. at 883.

///

The Court evaluates equitable mootness with respect to specific claims, not the entire appeal. In re Filtercorp, Inc., 163 F.3d at 576-78 (holding that although appeal regarding sale of assets was moot, appeal of summary judgment order that did not seek to overturn asset sale was not equitably moot). The "party moving for dismissal on mootness grounds bears a heavy burden." Thorpe, 677 F.3d at 880 (quotation omitted).

Here, none of the issues in Meritage's appeal are constitutionally or statutorily moot because the Court can provide effective relief by modifying the Confirmation Order. Although assets have been transferred to the Acquirer, none of the issues in Meritage's appeal seek to undo the asset transfer. All relate only to the potential impact of Plan provisions on litigation claims or defenses in other actions between Meritage and South Edge, the Settling Builders, or JPMorgan and the other prepetition lenders. Thus, the Court could afford effective relief by modifying or striking the portions of the Plan and Confirmation Order which Meritage challenges.

As to equitable mootness, Meritage failed to seek or obtain a stay. This factor weighs in favor of finding all issues in Meritage's appeal equitably moot, but it does not require a mootness finding. As to the second factor, the Plan has been substantially consummated. Substantially all of the property proposed by the Plan has been transferred and a series of interrelated transactions have occurred. Specifically, the Settling Builders have paid nearly $340 million to JPMorgan and those funds have been distributed to the prepetition lenders. (Decl. of William A. Austin in Support of Appellee's Mot. for Dismissal of Appeal (Doc. #18) at 13.) Administrative creditors of the estate have been paid over $10 million, including payments on LID Bond assessments, property taxes, and to contractors working on the Inspirada project. (Id.) One of the builder members has been paid over $40 million on a related arbitration claim. (Id.) The Settling Builders paid $1 million to fund the payment of unsecured creditors under the Plan. (Id.) Substantially all of the estate's assets have been transferred to the Acquirer. (Id.) Additionally, many related

lawsuits and claims have been settled in reliance of the Confirmation Order where no stay was sought or obtained.  (Id.)  This factor therefore weighs in favor of finding all claims in Meritage's appeal equitably moot.

However, the third factor weighs against a finding of equitable mootness.  The issues in Meritage's appeal would not affect the rights of third parties not before the Court. Meritage does not seek to overturn confirmation or undo consummated transactions with innocent third parties.  For example, Meritage does not challenge provisions of the Plan which provide for the payment of general unsecured creditors.  Rather, it seeks modification or elimination of discrete provisions which impact only the litigation positions of Meritage vis-a-vis other parties who are before the Court–JPMorgan and the other prepetition lenders, the Settling Builders, and South Edge.  The Court therefore could fashion equitable relief without unduly or inequitably impacting innocent third parties.

The final and most important factor also weighs against equitable mootness.  The issues in Meritage's appeal do not seek to overturn confirmation and are directed at discrete provisions which can be modified without making an unmanageable situation for the bankruptcy court.  Altering these provisions in relation to Meritage's potential claims and defenses in other litigation would not completely unravel an otherwise comprehensive settlement of multi-million dollar intractable litigation that has spanned numerous cases in multiple courts, and settlement has resulted in resumption of development at an otherwise defunct development project.  Although JPMorgan and the Settling Builders contend they bargained for and thought they were attaining peace, they have obtained the peace they bargained for with each other regardless of whether the Court finds Meritage's appeal equitably moot.  They could not have thought they were attaining peace as to Meritage, as the nonbankruptcy litigation involving Meritage will proceed regardless of whether the Court denies the appeal as equitably moot, denies the appeal on the merits, or grants Meritage's appeal in whole or in part.

JPMorgan and the Settling Builders' concern that Meritage strategically decided not to seek a stay so that it could obtain the benefits of the Plan while seeking to strike or modify those provisions which are unfavorable to its position is not without force. However, on balance, the Court concludes JPMorgan and the Settling Builders have not met their heavy burden of showing it would be inequitable to consider the merits of Meritage's appeal where no third party rights are affected, the Court can fashion effective relief, and Meritage raises substantial arguments about the bankruptcy court's power to approve some of the provisions at issue in the appeal. The Court therefore will deny JPMorgan and the Settling Builders' Motion to Dismiss.

**III.  MERITAGE'S APPEAL**

Meritage makes four main arguments on appeal. First, Meritage argues a bankruptcy court may not approve a nonconsensual release of nondebtor third party claims. Meritage contends the Plan and Confirmation Order therefore must be modified so that the exculpation clause in section 8.10 applies only to the debtor, the estate, and any estate fiduciaries. Second, Meritage argues there is no basis in the record for the bankruptcy court's factual findings in support of approving section 8.10. Third, Meritage challenges the authority to issue the post-confirmation injunction in section 8.3. Finally, Meritage challenges the bankruptcy court's ruling that Plan confirmation does not "affect" or "satisfy" Meritage's Repayment Guaranty.

The Court reviews de novo the bankruptcy court's conclusions of law, "including its interpretation of the Bankruptcy Code." In re Rains, 428 F.3d 893, 900 (9th Cir. 2005) (quotation omitted). The Court reviews the bankruptcy court's factual findings for clear error. Id. (quotation omitted); Fed. R. Bankr. P. 8013. The bankruptcy court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the bankruptcy court made a mistake. In re Rains, 428 F.3d at 900 (quotation omitted). The Court reviews the bankruptcy court's decision to confirm a reorganization plan for an

abuse of discretion.  In re Brotby, 303 B.R. 177, 184 (9th Cir. BAP 2003).  "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact."  Id.  The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record."  In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

## A.  Exculpation Clause - Section 8.10

Section 8.10 exculpates not only the debtor, but third party nondebtors, such as JPMorgan and the Settling Builders, "for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the Disclosure Statement, or any contract, instrument, release, or other agreement or document entered into during the Chapter 11 Case or otherwise created in connection with this Plan."  (AER Tab 2 at 650-51.)  However, no party was released from obligations under the Plan or for willful misconduct or gross negligence.

Meritage contends that under controlling authority, the bankruptcy court lacked the power to confirm a plan that purports to release a nondebtor third party from liability over the objection of another interested nondebtor third party.  Meritage further contends the Plan Proponents cannot obtain such a nonconsensual third party release through the use of an exculpation clause, as such clauses are valid only if limited to the debtor, the estate, and their fiduciaries.

JPMorgan and the Settling Builders respond that courts within this Circuit have approved similar clauses.  They also contend such clauses are consistent with federal preemption principles because any challenges to conduct during or in relation to a bankruptcy proceeding should be resolved by the bankruptcy court, rather than being subject to collateral attack in a nonbankruptcy forum.

Some Circuits allow a bankruptcy plan to include a nonconsensual release of one nondebtor's claims against another nondebtor under certain circumstances.  See Behrmann

v. Nat'l Heritage Found., 663 F.3d 704, 710 (4th Cir. 2011); In re Airadigm Commc'ns, Inc., 519 F.3d 640, 657 (7th Cir. 2008); In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141-42 (2d Cir. 2005); In re Dow Corning Corp., 280 F.3d 648, 656-58 (6th Cir. 2002).  However, the United States Court of Appeals for the Ninth Circuit has prohibited such releases as a matter of law, concluding that bankruptcy courts lack the power under the Bankruptcy Code to discharge the liabilities of third parties who are not seeking bankruptcy protection.  See Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) ("[A] bankruptcy court cannot confirm a reorganization plan that discharges the liabilities of a third party."); In re Lowenschuss, 67 F.3d 1394, 1402 (9th Cir. 1995) ("This court has repeatedly held, without exception, that [11 U.S.C.] § 524(e)[1] precludes bankruptcy courts from discharging the liabilities of non-debtors.").[2]  This Court is bound by Ninth Circuit authority.  Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001).  The Court therefore must reject a plan provision which purports to release third parties from liability to a nonconsenting nondebtor.  Whether the Ninth Circuit ought to reexamine its prohibition on such releases is a matter for the Ninth Circuit, not this Court.

The question thus becomes whether the exculpation clause in section 8.10 of the Plan improperly releases third parties liability or whether it merely sets the standard of care in this bankruptcy proceeding which would preempt the assertion of any state law claims which seek to impose a different standard of care.  Under federal preemption principles, the Bankruptcy Code "completely preempts state law tort causes of action for damages predicated upon the filing of an involuntary bankruptcy petition."  In re Miles, 430 F.3d

---

[1]  Section 524(e) provides:  "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

[2]  See also In re Am. Hardwoods, Inc., 885 F.2d 621, 625-26 (9th Cir. 1989); Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985), rejected on other grounds by Reves v. Ernst & Young, 494 U.S. 56 (1990).

1083, 1086, 1089-91 (9th Cir. 2005).  For example, state law tort claims for malicious

prosecution and abuse of process based on the filing of a bankruptcy petition, or for acts or

omissions during a bankruptcy proceeding, are completely preempted.  Id. at 1089-91; MSR

Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 915-16 (9th Cir. 1996); Gonzales v.

Parks, 830 F.2d 1033, 1035-36 (9th Cir. 1987).

> State courts are not authorized to determine whether a person's claim
> for relief under a federal law, in a federal court, and within that court's
> exclusive jurisdiction, is an appropriate one.  Such an exercise of
> authority would be inconsistent with and subvert the exclusive
> jurisdiction of the federal courts by allowing state courts to create their
> own standards as to when persons may properly seek relief in cases
> Congress has specifically precluded those courts from adjudicating.
> The ability collaterally to attack bankruptcy petitions in the state courts
> would also threaten the uniformity of federal bankruptcy law, a
> uniformity required by the Constitution.

MSR Exploration, 74 F.3d at 915 (quotation and citation omitted).

Moreover, Congress has chosen the remedies available for the frivolous filing of

a bankruptcy petition, and "Congress' authorization of certain sanctions for the filing of

frivolous bankruptcy petitions should be read as an implicit rejection of other penalties,

including the kind of substantial damage awards that might be available in state court tort

suits." Id. at 915-16 (quotation omitted).  "[I]t is for Congress and the federal courts, not

the state courts, to decide what incentives and penalties are appropriate for use in

connection with the bankruptcy process and when those incentives or penalties shall be

utilized." Id. at 916 (quotation omitted).

In conformity with these principles, some courts have found exculpation

provisions similar to the one in section 8.10 confirmable because they "do[] not affect the

liability of these parties, but rather states the standard of liability under the Code, and thus

do[] not come within the meaning of § 524(e)." In re PWS Holding Corp., 228 F.3d 224,

245 (3d Cir. 2000); see also In re WCI Cable, Inc., 282 B.R. 457, 476-77 (Bankr. D. Or.

2002).  In other words, the exculpation clauses do not affect a change in third party liability

16

to nondebtors because a state law tort claim for malicious prosecution or abuse of process based on the filing of a bankruptcy petition does not exist, and thus there is no liability to release.  See In re Miles, 430 F.3d at 1091 (holding that "11 U.S.C. § 303(i) provides the exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition").

In light of the above authorities, the exculpation provision in section 8.10 when properly interpreted is within the bankruptcy court's power because the bankruptcy court has exclusive jurisdiction over the parties and their conduct in the bankruptcy proceedings. Section 8.10 sets a standard of care to be applied in the bankruptcy proceeding–a matter which lies within the bankruptcy court's exclusive jurisdiction–and reiterates federal preemption principles.  Consequently, section 8.10 does not improperly release third party nondebtors, such as JPMorgan and the Settling Builders, from liability arising out of these Plan Proponents' activities in relation to the bankruptcy proceeding because to the extent any particular state law claim is preempted, no such state law claim exists.  The exculpation clause in section 8.10 therefore does not violate the Ninth Circuit's prohibition on nonconsensual third party releases through plan confirmation.

Whether any particular state law claim is barred by the exculpation clause or federal preemption principles in general is not an issue before the Court in deciding whether to confirm the Plan.  The only question before the Court in this appeal is whether to affirm or reverse the bankruptcy court's confirmation of the Plan.  Whether any particular state law claim is preempted must be decided by the court presented with such a claim in the context of the particular claim alleged, or, alternatively, by the bankruptcy court if relief is sought in that forum.  See In re McGhan, 288 F.3d 1172, 1181 (9th Cir. 2002); In re Birting Fisheries, Inc., 300 B.R. 489, 501 (9th Cir. BAP 2003).

///

///

**B.  Factual Findings in Support of Section 8.10**

Meritage contends that the bankruptcy court's factual findings in support of section 8.10 do not support the release of nonconsensual third party liability.  Meritage contends there is no evidence the release in section 8.10 was integral to the Plan or was given in exchange for valuable consideration.  According to Meritage, the Plan Support Agreement demonstrates the release was not integral to the Plan because the Plan Sponsors agreed they would proceed with the proposed Plan regardless of whether the bankruptcy court approved the proposed treatment of Meritage.  JPMorgan and the Settling Builders respond that the bankruptcy court made sufficient factual findings and the record supports those findings.

As an initial matter, Meritage's objection regarding a lack of factual findings to support nonconsensual third party releases fails because, as discussed above, when properly interpreted section 8.10 does not release third parties from liability.  Consequently, the bankruptcy court did not need to make any findings supporting nonconsensual third party releases.  The bankruptcy court made sufficient factual findings to support the exculpation clause in section 8.10.  The bankruptcy court found the Plan was proposed in good faith, provided the greatest opportunity to maximize the estate, was negotiated in good faith and at arms' length, achieved peace among most parties that had been involved in protracted litigation, and provided a means to restart an otherwise defunct development that affected not just the parties before the Court, but the community at large.  (AER Tab 8 at 748-49.) The bankruptcy court also found the Plan Proponents made substantial contributions to the settlement, including the payment of millions of dollars by the Settling Builders, the prepetition lenders' consent to the Plan despite a deficiency of approximately $47 million, and the resumption of development on the project.  (Id. at 753.)

Specifically with respect to section 8.10, the bankruptcy court found the releases were within the court's jurisdiction and conferred a material benefit on the Plan Proponents,

the debtor, the estate, and creditors.  (<u>Id.</u> at 747.)  Additionally, the bankruptcy court found the exculpation clause was important to the Plan's overall objectives and was in exchange for valuable consideration.  (<u>Id.</u>)  The bankruptcy court further concluded section 8.10 was consistent with controlling authority that exculpation clauses establish a standard of care in bankruptcy proceedings and are supported by federal preemption principles.  (<u>Id.</u>)  These findings are amply supported by the record.  (AER Tabs 6-7, 13-15, 22.)

Meritage appears to challenge only the bankruptcy court's findings that the exculpation clause was important to the Plan and was in exchange for valuable consideration.  Meritage relies on one provision of the Plan Support Agreement to make this argument.  Under the Plan Support Agreement, if Meritage did not become a Settling Builder, the Plan would provide that Meritage's Guaranties were not released by the Plan. Additionally, the Settling Builders would contribute funds equal to the amount of Meritage's Repayment Guaranty to be placed in an escrow account through which the Settling Builders could participate in any recovery against Meritage on the Repayment Guaranty.  The Plan Support Agreement stated that "the Confirmation Order shall be acceptable to the Parties even if it does not enforce any or all" of the above provisions with respect to the treatment of Meritage's Repayment Guaranty.  (AER Tab 1 at 195-96.) Based on this language, Meritage contends the exculpation provision was not important to the Plan nor supported by consideration.

This language in the Plan Support Agreement had nothing to do with the exculpation clause in section 8.10, however.  It referred only to whether the Plan, by operation of the bankruptcy laws, would release or satisfy Meritage's Repayment Guaranty and whether the bankruptcy court would allow the use of the escrow fund and the Settling Builders' participation in JPMorgan's claims against Meritage on the Repayment Guaranty. The evidence which Meritage relies upon therefore does not show that the exculpation clause in section 8.10 was not integral to the Plan or unsupported by consideration.

### C.   Post-Confirmation Injunction in Section 8.3

Meritage argues the post-confirmation injunction in section 8.3 is actually a discharge to which South Edge is not entitled under 11 U.S.C. § 1141(d)(3).  Meritage contends section 8.3 improperly bars Meritage from asserting rights against the estate and its successors.  JPMorgan and the Settling Builders respond that section 8.3 does not bar Meritage from asserting rights against South Edge or its estate.  Rather, section 8.3 ensures that whatever rights or offsets Meritage asserts are administered through the Plan, and not through satellite litigation.  JPMorgan and the Settling Builders contend the injunction is limited in scope and duration, and will cease upon dissolution of South Edge once all South Edge assets are administered.

South Edge was not entitled to a discharge under 11 U.S.C. § 1141(d)(3), and the bankruptcy court acknowledged that fact.  Section 8.3 is not a de facto discharge and it does not bar Meritage from asserting any defenses or setoff rights against South Edge.  Section 8.2 specifically preserves those rights, and section 8.3 provides that a creditor's rights vis-a-vis South Edge are those set forth in the Plan.  As the following colloquy during a hearing before the bankruptcy court explained,

> COURT:  [T]o the extent [Meritage has] any rights against the reorganized debtor those would be offset rights under 552 and 506 secured claims.
> SHAFFER:  Exactly.  They can't actually affirmatively collect anything, but their unsecured claim would, in essence, morph into a secured claim to the extent . . . of a valid offset.

(AER Tab 7 at 650.)  In other words, to the extent Meritage still has claims against South Edge or the estate, those claims are contingent claims, and "[t]o the extent that those contingent claims become fixed, they would be treated as secure claims in Class . . . S-1."  (Id. at 683-84, 706.)  Such treatment is appropriate where, as here, the estate will continue for a period of time post-confirmation.  See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588-90 (9th Cir. 1993).

**D.  Meritage's Repayment Guaranty**

Meritage challenges language in the Confirmation Order that Plan confirmation did not "affect" or "satisfy" Meritage's Repayment Guaranty.  Meritage contends the bankruptcy court repeatedly indicated during the proceedings that it would not rule on the merits of any party's arguments in nonbankruptcy litigation.  Meritage contends the bankruptcy court nevertheless ruled Meritage's obligations under the Repayment Guaranty were not affected or satisfied under the Plan.  Meritage contends the bankruptcy court thereby made a conclusion of law which JPMorgan will use in nonbankruptcy litigation that the Plan does not satisfy Meritage's obligations under state law.

JPMorgan and the Settling Builders respond that the bankruptcy court made clear it would resolve the issue of the effect of Plan confirmation on Meritage's Repayment Guaranty under bankruptcy law, and that is what the bankruptcy court did.  JPMorgan and the Settling Builders further contend that this result is consistent with controlling authority that the debtor's discharge in bankruptcy does not discharge the liabilities of codebtors or guarantors, and it is consistent with the terms of Meritage's Repayment Guaranty.  JPMorgan and the Settling Builders argue this result is not only correct legally and factually, but was fair because Meritage contributed nothing to the settlement and thus cannot expect to have its own debts exonerated.

The bankruptcy court indicated on multiple occasions that it would not decide the merits of Meritage's obligations under the Repayment Guaranty.  (AER Tab 6 at 489-99, 494-95, 502-03.)  However, the bankruptcy court made clear that it would decide the impact of confirmation on Meritage's Repayment Guaranty under bankruptcy law.  (Id. at 494-95, 502.)  Its decision that confirmation did not affect or satisfy Meritage's Repayment Guaranty is consistent with settled law that discharge of a debtor does not release codebtors or guarantors.  11 U.S.C. § 524(e); see also In re American Hardwoods, Inc., 885 F.2d at 625.  The decision also is consistent with the expectations of the parties in this proceeding

1    where Meritage contributed nothing to the settlement.

2           The bankruptcy court did not purport to decide whether the transactions in the

3    Plan satisfied Meritage's Repayment Guaranty under nonbankruptcy law.  (AER Tab 7 at

4    553.)  As acknowledged at the hearing before the bankruptcy court, that question remains

5    for another forum to resolve:

6           ENGEL:  There's no right intended anywhere in the plan or in the
            related documents that intends that Meritage get its windfall
7           forgiveness without payment which is what they're seeking.
            COURT:  I appreciate it, and this may be more a question for Mr.
8           Shaffer than for you, but your position is, listen, if New York law
            when it ultimately is brought to a court of competent jurisdiction says
9           that the procedures used today or proposed to be used today by the plan
            proponents exonerates their guarantee so be it.
10          ENGEL:  So be it.
            COURT:  Right.  That's a risk the settling builders are taking.
11          ENGEL:  That's a risk that they took.  We think it's a small risk, but
            that's the risk they took.
12          Court:  Right.

13   (Id. at 555.)  The bankruptcy court therefore properly resolved the issue within its exclusive

14   jurisdiction–the impact of Plan confirmation on Meritage's Repayment Guaranty under

15   bankruptcy law–and left for another forum to resolve the impact, if any, of the Plan

16   transactions on Meritage's Repayment Guaranty under applicable state law.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**E.  Conclusion**

The bankruptcy court acted within its power in setting a standard of care and reiterating federal preemption principles in section 8.10 of the Plan, and the bankruptcy court made sufficient factual findings in support of that ruling.  The bankruptcy court also properly entered a post-confirmation injunction in section 8.3 which is of limited scope and duration to ensure estate assets are administered according to the Plan.  Finally, the bankruptcy court gave notice of its intent to determine the issue of the Plan's impact on Meritage's Repayment Guaranty under bankruptcy law, and that decision was within the bankruptcy court's exclusive jurisdiction.

**AFFIRMED.**


DATED:  August 8, 2012


_____
PHILIP M. PRO
United States District Judge